IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

JAMES T. KETCHUCK and JASON A.
KETCHUCK,

               Plaintiffs,

                                       Civ. Action No.
                                       3:10-CV-0870 (TJM/DEP)

          v.

DAVID FERRIS, W.T. MOULTON and
BRAD A. BOYER,

               Defendants.

_____

APPEARANCES:                 OF COUNSEL:

FOR PLAINTIFFS:

JAMES T. KETCHUCK, *Pro Se*
JASON A. KETCHUCK, *Pro Se*
248 Cafferty Lane
Endicott, NY 13760

FOR DEFENDANT BOYER:

HON. ERIC T. SCHNIEDERMAN     DAVID B. ROBERTS, ESQ.
Attorney General of                     Assistant Attorney General
the State of New York
The Capitol
Albany, NY 12224

FOR DEFENDANTS FERRIS AND
MOULTON:

[NONE]

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

## REPORT AND RECOMMENDATION

*Pro se* plaintiffs James T. and Jason A. Ketchuck, who are father

and son, respectively, have commenced this civil rights action pursuant to

42 U.S.C. § 1983.  Their complaint asserts claims arising from two

separate incidents, one occurring in October of 2007, when plaintiff James

Ketchuck was arrested by defendants W. T. Moulton and David Ferris,

and the second involving an October 2008 arrest of Jason Ketchuck by

defendant Brad A. Boyer.

This report and recommendation is issued to address two matters.

The first concerns a request by plaintiff James Ketchuck for an extension

of time to serve defendants Moulton and Ferris.  The second relates to

whether the claims in this action are properly joined.

Plaintiffs' attempts to serve defendants Moulton and Ferris

personally to date have been unsuccessful.  They now seek an additional

extension of time to do so as well as court-authorized service by

alternative means upon Moulton and the issuance of a subpoena upon

Ferris' former employer in order to obtain his home address.  Upon review

of plaintiffs' submission, it appears that they have exercised due diligence

2

in their attempts to serve defendants Moulton and Ferris, and their application should be granted.

Addressing the question of potential misjoinder, I have reviewed the plaintiffs' complaint and conducted two separate conferences in the action.  Based upon my assessment, I conclude that the case involves two separate claims, stemming from two unrelated occurrences and arrests made by two different agencies.  As such the plaintiffs' claims are not properly joined in one action, and I therefore recommend that they be severed *sua sponte*.

I.      BACKGROUND

Plaintiffs commenced this action on July 16, 2010.  Their complaint is based upon two separate incidents.  The first, occurring on October 23, 2007, involved the arrest of plaintiff James Ketchuck attributed by him to defendants W. T. Moulton and David Ferris, a Tioga County Deputy Sheriff, and the Owego Town Highway Supervisor, respectively, for criminal mischief.  That arrest was based upon allegations that plaintiff James Ketchuck excavated a drainage ditch on a town roadway and the resulting felony complaint in the Town of Owego Justice Court accusing

James Ketchuck of third degree criminal mischief.[1]

The second relevant incident, giving rise to plaintiff Jason Ketchuck's claim, involved his arrest on October 31, 2008 by defendant Brad A. Boyer, a New York State Trooper, for trespass based upon allegations that he operated a vehicle on the property of another.   That arrest followed the filing of an information in the Town of Owego Court on October 22, 2008 charging Jason Ketchuck with criminal mischief in the fourth degree.[2]  In their complaint plaintiffs have asserted various claims growing out of their respective arrests, including false arrest, malicious prosecution, and abuse of process.

Since commencement of the action Trooper Boyer, the defendant in connection with Jason Ketchuck's claims, has been served and has answered.  Despite extensions of the time for service through December 31, 2010, however, plaintiff James Ketchuck has been unable to effectuate service upon Ferris and Moulton, named as defendants in connection with his claims, even though the summonses were issued on

---

[1]       According to a certificate of disposition attached to plaintiffs' complaint, that charge was later dismissed.

[2]       A certificate of disposition attached to plaintiffs' complaint reflects that that charge and a related charge of trespass were subsequently dismissed in the interest of justice.

July 16, 2010.  Accordingly, those defendants have yet to appear in the action.

A digitally recorded telephone conference was conducted by me in connection with the action on March 10, 2011.  During that conference plaintiff James Ketchuck stated that he is having difficulty serving the two defendants named in his claims and indicated that he would be requesting a further extension of the deadline for effectuating service.  During that conference I advised the plaintiffs of my belief that their claims are unrelated and indicated that I would give consideration to recommending that the court *sua sponte* sever the two claims.

II.     DISCUSSION

A.     Service of Process

Rule 4(m) of the Federal Rules of Civil Procedure requires that service of a summons and complaint be made within 120 days of issuance of the summons.[3]  That prescribed period may, in appropriate

---

[3]     That rule provides that

[i]f a defendant is not served within 120 days after the complaint is filed, the court–on motion or on its own after notice to the plaintiff–must dismiss the action without prejudice against that defendant or order that service be made within a specified time.  But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

circumstances, be extended by the court.  "[W]here good cause is shown, the court has no choice but to extend the time for service, and the inquiry is ended."  *Panaras v. Liquid Carbonic Indus. Corp.*, 94 F.3d 338, 340 (7th Cir. 1996).  "If, however, good cause does not exist, the court may, in its discretion, either dismiss the action without prejudice or direct that service be effected within a specified time."  *Id.* (citing Fed. R. Civ. P. 4(m)); *Zapata v. City of New York*, 502 F.3d 192, 196 (2d Cir. 2007) ("[D]istrict courts have discretion to grant extensions even in the absence of good cause.");  *Romandette v. Weetabix Co., Inc.*, 807 F.2d 309, 311 (2d Cir. 1986).  When examining whether to extend the specified 120-day period for service, a district court is afforded ample discretion to weigh the "overlapping equitable considerations" involved in determining whether good cause exists and whether an extension may be granted in the absence of good cause.  *See Zapata*, 502 F.3d at 197.  Additionally, it should be noted that it is well settled that a plaintiff's *pro se* status entitles him or her to a certain degree of leniency insofar as service of process is concerned; courts generally favor resolution of such a case on its merits, rather than on the basis of a procedural technicality.  *Poulakis v. Amtrak*,

---

Fed. R. Civ. P. 4(m). This court's local rules shorten the time for service from the 120 day period under Rule 4(m) to sixty days.  *See* N.D.N.Y.L.R. 4.1(b).

139 F.R.D. 107, 109 (N.D. Ill. 1991).

Despite the fact that this lawsuit has been pending for over eight months, defendants Moulton and Ferris have been yet to be served and thus the court has not yet acquired jurisdiction over them.[4]  *See, e.g., Michelson v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 709 F. Supp. 1279, 1282 (S.D.N.Y. 1989) (citing *Mississippi Publ'g Corp. v. Murphree*, 326 U.S. 438, 444-45, 66 S. Ct. 242, 245-46 (1946)) (court lacks jurisdiction until defendants are properly served with summons and complaint).

Plaintiffs' submission in support of their request for a further extension of time demonstrates both good cause and the exercise of due diligence in attempt to serve these defendants.  With regard to Moulton, in support of their request plaintiffs submit the affidavit a process server, Steven H. Engler, who states that he was provided with the summons for service upon Moulton on July 17, 2010.  Engler states further that he has made multiple attempts to serve that defendant at his place of business,

---

[4]      The court notes that plaintiffs were previously granted an extension of time to effect serve on the named defendants.  That extension expired December 31, 2011.  During a telephone status conference conducted on March 10, 2011, plaintiffs advised the court of the difficulties encountered in their attempts to complete service upon Moulton and Ferris.  Though the deadline for service had expired, in deference to plaintiffs' *pro se* status, the court granted them permission to file the present motion.

the Tioga County Sheriff's Office, but that personnel at that office have refused to allow him to serve Moulton and also have refused to accept service on his behalf, despite the fact that Moulton was on the premises at the time.  Additionally, plaintiff James Ketchuck states that he has conducted a search of phone listings, public records, internet search engines, and other listings and records, and has been unable to locate a home address for Moulton.  Plaintiffs seek leave to serve Moulton pursuant to New York Civil Practice Law and Rules 308(4) by affixing the summons and complaint to the door of his actual place of business and by United States mail to his actual place of business.[5]

Evasion of service by a putative defendant constitutes good cause for failure to serve.  *Varela v. Velez*, 814 F.2d 821, 823-34 (1st Cir. 1987) (citing *United States v. Kenner General Contractors, Inc.*, 764 F.2d 707, 710 (9th Cir.1985); *Wei v. State of Hawaii*, 763 F.2d 370, 371 (9th Cir.1985); *Prather v. Raymond Construction Co.*, 570 F. Supp. 278, 282 (N.D. Ga.1983)).  From plaintiffs submissions, it appears that Moulton may be avoiding service of the summons and complaint.  In view of the

---

[5]     Fed. R. Civ. Proc. 4(e)(1) provides that a plaintiff may serve an individual within a judicial district of the United States by following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made.

8

foregoing, I recommend that, should James Ketchuk's action proceed, he be granted an additional extension of time to serve this defendant in the manner requested.

Turning to plaintiffs' attempts to serve Ferris, as to this individual Engler states, again, that he received the summons and complaint on July 17, 2010, and that he made multiple attempts to locate Ferris at the address believed to be his place of business, the Department of Highways of the Town of Owego.  Engler was eventually advised that Ferris is no longer employed as the superintendent of highways for the Town of Owego, and the Town has refused to release Ferris' residential address or any other known address for Ferris.  Engler states further that he conducted a search of telephone records, published records, internet sources, and other public records and listings, and was unable to locate an address for Ferris.  The court recommends a finding that plaintiffs have exercised due diligence in attempting to serve Ferris and that, should James Ketchuk's action proceed, his request as it relates to this defendant also be granted.

B.     Severance of Claims

Permissive joinder of plaintiffs in a single action is governed by Rule

20 of the Federal Rules of Civil Procedure.  That rule provides, in relevant part, as follows:

> **(1) Plaintiffs**. Persons may join in one action as plaintiffs if:
>
> **(A)** they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
>
> **(B)** any question of law or fact common to all plaintiffs will arise in the action.

Fed. R. Civ. P. 20(A)(1); *see Corporan v. City of Binghamton*, No. 05-CV-1340, 2006 WL 2970495, at *2 (N.D.N.Y. Oct. 16, 2006).[6]  Federal Rule of Civil Procedure 21 authorizes the court to order severance where there has been a misjoinder of claims.  *Davidson v. District of Columbia*, 736 F. Supp. 2d 115, 119 (D.D.C. 2010).  The decision of whether to sever is addressed to the sound discretion of the court.  *Corporan,* 2006 WL 2970495, at *3.  The court is authorized to consider severing claims either on motion of the parties or *sua sponte*.  *Prospect Capital Corp. v. Bender*, No. 09 Civ. 826 (HB), 2009 WL 4907121, at *7 n. 9 (S.D.N.Y. Dec. 21, 2009).

---

[6]     Copies of all unreported decisions cited in this document have been appended for the convenience of the *pro se* plaintiff.

The decision of whether to grant a severance of potentially unrelated claims is informed by several relevant factors, including whether 1) the claims arise out of the same transaction or occurrence; 2) they present common questions of law or fact; 3) settlement of the claims or judicial economy would be furthered by severance; 4) prejudice would be avoided through severance; and 5) different witnesses and evidence is required in connection with separate claims.  *Corporan*, 2006 WL 2970495, at *3; *Globe American Cas. Co. v. Davis*, No. 1:08-cv-232, 2008 WL 586419, at *3 (E.D. Tenn. 2008); *Disparte v. Corporate Executive Bd.*, 223 F.RD. 7, 12 (D.D.C. 2004).  In addition, the court should consider whether prejudice would result to any party in the event of undue delay associated with misjoinder.  *Davidson,* 736 F. Supp. 2d at 120.

In this instance, it is evident that the two claims in the action arise out of different transactions or occurrences.  The arrests in question were made by two separate agencies, and while the claims asserted by the two share common themes and therefore present related issues of law, the facts associated with each are different.  Although defendants Ferris and Moulton have yet to appear, it is likely that they will be represented by counsel other than the New York State Attorney General, whose office

represents Trooper Boyer.

Perhaps the most persuasive factor in determining whether severance is appropriate in this instance is the question of delay and corresponding prejudice. The court has put in place a schedule governing the progression of the case, and based upon the recent court conference it appears that plaintiff Jason Ketchuck and defendant Boyer are prepared to meet the schedule, which provides for completion of discovery by July 8, 2011 and a scheduled jury trial for January 17, 2012. On the other hand, defendants Ferris and Moulton have yet to appear in answer to plaintiff James Ketchuck's claim. Allowing the two plaintiffs' claims to proceed together would in all likelihood result in a delay and would clearly jeopardize the schedules implemented by the court. The fact that Jason Ketchuk's claim could well be further delayed due to his father's difficulties in obtaining jurisdiction over the would-be defendants weighs heavily in favor of severing his claims from those of his father. For the foregoing reasons, I recommend severance of the plaintiffs' claims.

III.    SUMMARY AND RECOMMENDATION

The complaint in this action improvidently joins two separate claims brought by two separate individuals against different defendants. In the

event that their claims remain joined it is likely that there will be significant

delay in bringing the matter to completion, due in large part to plaintiff

James Ketchuck's inability to obtain jurisdiction over defendants Ferris

and Moulton.   Under the circumstances, I therefore recommend

severance of the two plaintiffs' claims.

Turning to the issue of service, it appears that defendant Moulton is

evading service, and defendant Ferris has left the employ of the Owego

Highway Department.  I therefore recommend that if plaintiff James

Ketchuck pays the required filing fee for his severed action, he be

afforded additional time to serve the two defendants, and that he be

permitted to use the method requested to serve defendant Moulton and

that a subpoena be issued to the Town of Owego Highway ordering the

production of defendant David Ferris' home address.

Based upon the foregoing it is hereby respectfully

RECOMMENDED as follows:

1)      The claims of plaintiff James Ketchuck against defendants

David Ferris and W.T. Moulton should be severed from the claims of

plaintiff Jason Ketchuck against defendant Brad A. Boyer.

2)      The clerk should be directed to open a new civil action in the

name of plaintiff James T. Ketchuck against defendants David Ferris and

W.T. Moulton, and assign the case, as a related matter, to Senior District

Judge Thomas J. McAvoy and myself as the assigned magistrate judge.

      3)     Plaintiff James T. Ketchuck should be directed to either pay

the required filing fee of $350 or submit an application for leave to proceed

*in forma pauperis* in the new action within thirty days of the date of the

court's order acting on this recommendation.

      4)     In the event that plaintiff James T. Ketchuck neither pays the

required filing fee nor submits an IFP application, the clerk should be

directed to dismiss the newly opened action.

      5)     Plaintiff James T. Ketchuck and defendants David Ferris and

W.T. Moulton should be dismissed as parties from this action and the

caption reformatted to reflect that it involves claims only of Jason A.

Ketchuck against defendant Brad A. Boyer, provided, however that for

statute of limitations purposes plaintiff James T. Ketchuck's claims against

defendants David Ferris and W. T. Moulton should be deemed to relate

back to the filing of this action.

      6)     Upon receipt of the filing fee or the issuance of an order

granting plaintiff James T. Ketchuck leave to proceed *in forma pauperis*,

the court clerk should be directed to issue summonses to defendants

David Ferris and W.T. Moulton.  Plaintiff James T. Ketchuck should then

be given ninety (90) days from that date, absent an extension of that time,

to effectuate service upon those defendants.

7)    Upon receipt of the filing fee or the issuance of an order

granting plaintiff James T. Ketchuck leave to proceed *in forma pauperis*,

his application is granted, *see* Dkt. No. 11, and he should be authorized to

serve W.T. Moulton pursuant to New York Civil Practice Law and Rules

308(4) by affixing the summons and complaint to the door of his actual

place of business, the Tioga County Sheriff's Office, and by United States

Mail to that same address.

8)    Upon receipt of the filing fee or the issuance of an order

granting plaintiff James T. Ketchuck leave to proceed *in forma pauperis,*

his application should be granted, Dkt. No. 11, and the clerk should be

directed to issue a subpoena for service by plaintiff James T. Ketchuk

directing that the Town of Owego and/or its agents and employees

release and deliver to plaintiff James T. Ketchuk the last known address

of the residence of David Ferris.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge

written objections to the foregoing report.  Such objections shall be filed

with the Clerk of the Court within FOURTEEN days.  FAILURE TO SO

OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW.

28 U.S.C. § 636(b)(1);  FED. R. CIV. P. 6(a), 6(e), and 72; *Roldan v.*

*Racette,* 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED, that the clerk of the court serve a copy of

this report and recommendation upon the parties in accordance with this

court's local rules.

Dated:      March 31, 2011
            Syracuse, NY

David E. Peebles
U.S. Magistrate Judge



Not Reported in F.Supp.2d, 2006 WL 2970495 (N.D.N.Y.)

(Cite as: 2006 WL 2970495 (N.D.N.Y.))

**C**

Only the Westlaw citation is currently available.
United States District Court,

N.D. New York.
Harold CORPORAN, Hamiel Perez, Celia Sosa, Miguel
Manaya, Joanna Buiza, Loreley Rodriguez, Jerry Green,
Khalid Abdul-Wahhab, Adelaida Diaz, Ana Martinez,
Pedro Masso-Diaz, Miguel Vasquez, Jr., and Jamila
Rivera, Plaintiffs,
v.
CITY OF BINGHAMTON; Richard A. Bucci,
Individually and in his Official Capacity as Mayor; John
Butler, Binghamton Chief of Police; Lisa Zikuski,
Assistant Police Chief; Captain Duane Shaffer; Sgt.
Patrick Mccormick; Sgt. Larry Hendrickson; Sgt.
Donald Burke; James Maerkl; Chris Bonanno; Jessica
A. Griffin; Patrick Sine; Steve Ward; Daniel Seidel;
John Spano; Thomas Skinner; Matthew Lewis;
Christopher Governanti; Nate Caro; Robert Kneer; John
Chapman; Alfanso Perna; David Baer; Jamie Korba;
Damien Maroney; and John and Jane Doe, Police
Officers, Individually and in their Official Capacities,
Defendants.
No. 05-CV-1340.

Oct. 16, 2006.

Ronald R. Benjamin, Office of Ronald R. Benjamin,
Binghamton, NY, for Plaintiffs.

Brian M. Seachrist, City of Binghamton Corporation
Counsel City Hall, Paul J. Sweeney, Coughlin, Gerhart
Law Firm, Alan J. Pope, Pope, Schrader Law Firm,
Binghamton, NY, for Defendants.

**DECISION & ORDER**

THOMAS J. McAVOY, Senior United States District
Judge.

**I. INTRODUCTION**

*1 This action was brought by thirteen plaintiffs
pursuant to 42 U.S.C. §§ 1981 and 1983, and state

common law, alleging that they were subjected to
racially-motivated disparate treatment by various members
of the Binghamton Police Department that resulted in
violations of their constitutional and state common law
rights. The action is brought against various Binghamton
police officers and the Chief of Police, John Butler, the
former Mayor of Binghamton, Richard A. Bucci, and the
City of Binghamton. Plaintiffs seek monetary damages and
declaratory and injunctive relief on their federal claims, as
well as monetary damages on their state law claims.

Defendants have moved pursuant to Rules 20 and 21
of the Federal Rules of Civil Procedure to dismiss or sever
the plaintiffs' claims into five separate actions (based on
five incidents separately identified in the Complaint) and,
pursuant to Rule 42(b) of the Federal Rules of Civil
Procedure to bifurcate the plaintiffs' § 1983 claims against
the individual defendants from the § 1983 claims against
the City of Binghamton. The plaintiffs do not oppose the
motion to bifurcate, but they do oppose dismissal or
severance of any claims.

**II. BACKGROUND**

The plaintiffs in this action are thirteen black and
Hispanic individuals who claim to have been treated in a
racially discriminatory manner by officers of the
Binghamton Police Department. The following is a brief
summary of the various incidents alleged in the
Complaint. The incidents are separated in a fashion
coinciding with the separation provided in the Complaint.
*See* Compl. ¶¶ 28-89.[FN1]

> FN1. The Complaint does not use the same
> headings as used in the text, but rather separates
> the incidents by the plaintiffs involved in each of
> the 5 incidents.

**Incident 1: "Sai Bless Inn I incident"**

Plaintiffs Corporan, Sosa, and Minaya were involved
in a series of incidents at the Sai Bless Inn on February 20,
2005. Compl. ¶ 28. In this regard, these plaintiffs allege
that while they were leaving the Inn (separately, not as a
group), there was a series of confrontations between them

Not Reported in F.Supp.2d, 2006 WL 2970495 (N.D.N.Y.)

(Cite as: 2006 WL 2970495 (N.D.N.Y.))

and a group of police officers on the scene, including Sergeants Burke and Hendrickson, and Officers Griffin, Bonanno, and Jane Doe. *Id.* at ¶¶ 29-46. Captain Shaffer and Officers Ward, Donahue, and Buemi were also present, but off-duty at the time. *Id.* at ¶ 29. During these confrontations, the plaintiffs allege that they were subjected to verbal abuse and excessive force. *Id.* at ¶¶ 31-45. All three of the plaintiffs were ultimately arrested and charged with Riot in the Second Degree. *Id.* at ¶¶ 33, 40, 46. Plaintiffs further allege that the District Attorney later refused to prosecute any of these three charges. *Id.* at ¶¶ 33, 40, 46.

**Incident 2: "Sai Bless Inn II incident"**

Plaintiff Perez was also confronted by Sergeant Hendrickson inside the lobby of the Sai Bless Inn on February 20, 2005. *Id.* at ¶¶ 47-48. He, like the other plaintiffs who were at the Inn that day, alleges that he was behaving lawfully when confronted, and that he was subjected to verbal abuse and excessive force. *Id.* at ¶¶ 48-51. He was arrested and charged with Harassment in the Second Degree. *Id.* at ¶ 52.

**Incident 3: "May 7, 2005 Sai Bless Inn incident"**

**\*2** Another incident occurred at the Sai Bless Inn on May 7, 2005. *Id.* at ¶ 54. During that incident, plaintiffs Buiza and Rodriguez allege that they were leaving the Inn when they were arrested and subjected to excessive force by a group of police officers including Captain Shaffer, and Officers McCormick, Ward, Governanti, Kneer, Lewis, Korba, Baer, Chapman, and Sine. *Id.* at ¶¶ 55-59.

**Incident 4: "Green Incident"**

Plaintiff Jerry Green's claims result from an incident that took place in downtown Binghamton on May 8, 2005. *Id.* at ¶ 60. He claims that he was acting lawfully when he was accosted, beaten, verbally abused, and arrested by a group of police officers who then deprived him of medical treatment. *Id.* at ¶¶ 61-65. It appears from the Complaint that the only officer present whose name is known to Green was Defendant Maerkl, though there were other officers involved whose names he claims will become known through discovery. *Id.* at ¶¶ 64, 66.

**Incident 5: "July 4th Incident"**

The final incident took place on July 4, 2005 outside the homes of some of the plaintiffs. *Id.* at ¶ 68. The plaintiffs involved in this incident were Abdul-Wahhab, Diaz, Martinez, Masso-Diaz, Vasquez, and Rivera. During this incident, the plaintiffs claim to have been lawfully watching fireworks when they were approached and ordered to disperse by a group of police officers including Captain Shaffer, Assistant Police Chief Zikuski, and Officers Bonanno, Spano, Martino, Governanti, and Skinner. *Id* . at ¶¶ 68-69, 86. The plaintiffs allege that the police then verbally abused, beat, handcuffed, and arrested them, then brought them to the police station where they were kept in handcuffs for extended periods of time. *Id.* at ¶¶ 74-85.

All of the plaintiffs involved in all of the incidents described allege that they were falsely arrested, that they were singled out for verbal and physical abuse because of their skin color and ethnicity, and that white citizens in similar circumstances would not have been treated in the same way. *Id.* at ¶ 87. They assert causes of action pursuant to 42 U.S.C. §§ 1981 and 1983, and state common law. *Id.* at ¶¶ 116-127.

**III. DISCUSSION**

*A. Dismissal or Severance of Claims*

Defendants move to sever the claims of the various plaintiffs in accordance with the five incidents identified above. Plaintiffs have opposed this portion of the motion.

**1. Standard**

Rule 20 of the Federal Rules of Civil Procedure governs the permissive joinder of parties. For defendants to be properly joined in an action, the claims against them must "aris[e] out of the same transaction, occurrence, or series of transactions and occurrences," and there must be some "question of law or fact common to all these persons [that] will arise in the action." Fed.R.Civ.P. 20(a). If the trial court finds that parties have been improperly joined under Rule 20, it can, in its discretion, choose to dismiss certain parties or claims, sever certain parties or claims, or order separate trials as it deems appropriate or necessary. Fed.R.Civ.P. 20(b), 21, 42(b); *see Gonzales v. City of Schenectady,* 2001 WL at 1217224, at * 10 (N.D.N.Y. Sept. 17, 2001)(McAvoy, J.).[FN2] However, Rule 21 provides that "[m]isjoinder of parties is not ground for dismissal of an action." Fed.R.Civ.P. 21. Because

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 2970495 (N.D.N.Y.)

(Cite as: 2006 WL 2970495 (N.D.N.Y.))

defendants seek dismissal of the entire action, or, in the alternative, severance of separately identifiable matters, and because Rule 21 prohibits of the dismissal of the entire action based upon misjoinder, the only viable option on this motion is severance.

FN2. In *Gonzalez,* this Court held:

Rule 21 of the Federal Rules of Civil Procedure allows for the severance of "any claims," and Rule 42(b) provides that a court may order a separate trial of any claim "in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy," Fed.R.Civ.P. 42(b). The distinction between these two rules is that "[s]eparate trials usually will result in one judgment, but severed claims become entirely independent actions to be tried, and judgment entered thereon, independently." 9 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure: Civil 2d § 2387.*

Trial courts have broad discretion to employ either of these rules, which are generally determined using the same standard. *Wausau Bus. Ins. Co. v. Turner Const. Co.,* 2001 WL 460928, at *2 (S.D.N.Y. May 2, 2001)(citing *New York v. Hendrickson Bros., Inc.,* 840 F.2d 1065 (2d Cir.), *cert. denied,* 488 U.S. 848 (1988)); *see also Smith v. Lightning Bolt Productions, Inc.,* 861 F.2d 363, 370 (2d Cir.1988).

**\*3** The Court has broad discretion in determining whether to grant or deny a motion for severance. *Smith v. Lightning Bolt Prod., Inc.,* 861 F.2d 363, 370 (2d Cir.1988). In considering such a motion, the Court must evaluate whether the severance will further the aims of justice and fairness. *In re Merrill Lynch & Co., Inc. Research Reports Securities Litig.,* 214 F.R.D. 152, 155 (S.D.N.Y.2003). In addition, the Court should consider whether the severance of claims will promote judicial economy, while avoiding the cumulative presentation of evidence. *Id.*

The following factors serve as guidelines in the disposition of such motions: 1) whether the claims arise out of the same transaction or occurrence; 2) whether the claims present some common questions as to law or fact; 3) whether settlement of the claims or judicial economy would be facilitated; 4) whether prejudice would be avoided if severance were granted; and 5) whether different witnesses and documentary proof are required for separate claims. *Gonzales,* 2001 WL 1217224, at * 10 (citing *Morris v. Northrop Grumman Corp.,* 37 F.Supp.2d 556, 580 (E.D.N.Y.1999)); *Wausau Bus. Ins. Co. v. Turner Constr. Co.,* 204 F.R.D. 248, 250 (S.D.N.Y.2001). To grant severance requires the presence of only one of these conditions. *Gonzales,* 2001 WL 1217224, at *10; *Lewis v. Triborough Bridge & Tunnel Authority,* 2000 WL 423517, at *2 (S.D.N.Y. April 19, 2000). Of paramount consideration is whether one of the parties to the litigation will suffer a substantial hardship as a result of either severance or joinder. The Court must balance the factors of benefit and prejudice to arrive at both a fair and equitable conclusion. *New York v. Hendrickson Bros., Inc.,* 840 F.2d 1065, 1082 (2d Cir.1988).

**2. Application**

In support of their motion to sever, the defendants argue that the various parties to this action have been improperly joined, and that there exist, in reality, five distinct actions that should be tried separately. The defendants assert that, because this action arises from five distinct transactions or occurrences, and because there is no question of law or fact common to all five of those transactions and occurrences, the claims arising from each of the five transactions should be severed and tried separately. Defendants also claim that they would be unfairly prejudiced if the case went to trial as one action.

The plaintiffs, in opposition, claim that there is a question of law common to all of their claims, namely, whether a racial motivation was behind their arrests and treatment by the defendants. As such, the plaintiffs contend that if their claims are severed, there will be substantial relitigation of the same issues relating to whether there are racially motivated and/or disparate policies within the Binghamton Police Department that led to the different incidents alleged in the Complaint. To avoid duplicative litigation, the plaintiffs urge the motion to sever should be denied.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 2970495 (N.D.N.Y.)

(Cite as: 2006 WL 2970495 (N.D.N.Y.))

**\*4** Turning to the first factor, the Court finds that both the Sai Bless Inn I incident and the Sai Bless Inn II incident arose from the same transaction or occurrence. Both incidents arose from police response to the situation confronted at the Sai Bless Inn on February 20, 2005 as patrons were leaving a party. The fact that one series of confrontations occurred outside the building and the other inside the building does not differentiate the incidents in such a way that it could be said they constitute separate transactions or occurrences. Further, the same police officer was involved in both incidents, and it is presumed that he was responding to the same situation when he interacted with the plaintiffs both inside and outside the building. For sake of clarity, the Court will refer to the Sai Bless Inn I incident and Sai Bless Inn II incident collectively as the "February 20, 2005 Sai Bless Inn incident."

The Court further concludes that the May 7, 2005 Sai Bless Inn incident, the Green Incident, and the July 4th Incident arose from transactions and occurrences that were separate from each other, and which were separate and apart from the February 20, 2005 Sai Bless Inn incident. These four incidents took place at different times over a span of five months and involved many different defendants. There is little that ties the incidents together, and the Court finds that the first factor weighs in favor of severance of the four separate occurrences.

As for the second factor, although there may be a common question of law presented, there are no common questions of fact at issue here except for the common factual questions forming the basis of the February 20, 2005 Sai Bless Inn incident. The plaintiffs' claims all arise from four different factual transactions with very little overlap, even in time or location. This also speaks to the fifth factor, whether different witnesses or documentary proof will be required for claims arising from the four separate transactions. It seems likely that, while there may be some overlap of witnesses called to testify about the policies present in the Binghamton Police Department, the vast majority of witnesses and documentary proof will differ among the groups of plaintiffs, depending on in which of the four transactions they were involved. The Court finds that the second and fifth factors weigh in favor

of severance to allow for four separate trials.

Looking at the third factor, it is unclear at this stage of the litigation whether settlement or judicial economy will be facilitated by severance. This factor weighs neither for nor against severance.

Looking at the fourth factor, it seems likely that the defendants would suffer some prejudice if the claims were all tried together. As the defendants assert in their Memorandum of Law and Reply in support of this motion, the likelihood of juror confusion if this case were tried as a whole is great due to the large number of persons involved and the various different incidents being contested. Further, some defendants may suffer spill-over prejudice if the jury concludes that other defendants, on different dates, acted in manner that violated any of the plaintiffs' rights. Accordingly, this factor weighs in favor of severance of the four occurrences.

**\*5** Having weighed and balanced all of the factors, the Court finds that the Sai Bless Inn I incident and Sai Bless Inn II incident need not be severed and can be tried together as one incident occurring on February 20, 2005. The Court further finds that the February 20, 2005 Sai Bless Inn incident should be severed from the May 7, 2005 Sai Bless Inn incident, the Green Incident, and the July 4th Incident, and that each of these incidents should be severed from each other.

Therefore, Defendants' motion to sever the claims identified above is **GRANTED** as follows. There shall be four separate trials. These trials shall involve: (1) all claims arising from the February 20, 2005 Sai Bless Inn incident; (2) all claims arising from the May 7, 2005 Sai Bless Inn incident; (3) all claims arising from the Green Incident; and (4) all claims arising from the July 4th Incident. From this point forward the Court and the parties shall treat each of the severed matters as if filed as separate actions. To more properly manage the four severed matters, Magistrate Judge Peebles should give the parties separate Pre-Trial Scheduling Orders for each of the separate matters. If any of the parties determine to make a motion involving any of the severed matters, the motion shall be made *only* regarding claims *in that matter.* In this regard, the Court will not entertain a motion that

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 2970495 (N.D.N.Y.)

(Cite as: 2006 WL 2970495 (N.D.N.Y.))

addresses claims arising in more than one of the four matters.

**B. Bifurcation**

Next, Defendants seek to bifurcate the Section 1983 claims against the individual defendants from the Section 1983 claims against the City of Binghamton. Bifurcation "may be appropriate where, for example, the litigation of the first issue might eliminate the need to litigate the second issue, or where one party will be prejudiced by evidence presented against another party." *Amato v. City of Saratoga Springs,* 170 F.3d 311, 316 (2d Cir.1999). The party moving for a bifurcation has the burden of showing that bifurcation is necessary "to prevent prejudice or confusion, and to serve the ends of justice." *Gonzales,* 2001 WL at 1217224, at * 11 (quoting *Buscemi v. Pepsico, Inc.,* 736 F.Supp. 1267, 1271 (S.D.N.Y.1990)).

Defendants have moved for bifurcation on the grounds that, if the plaintiffs fail on their claims against the individual defendants, the Section 1983 claims brought against the City of Binghamton will not need to be reached. Plaintiffs have conceded this point and have indicated that the "the interests of justice are best served by bifurcation, with the cases being tried 'back to back to the same jury.' " Plf. Mem. L. p. 5 (quoting *Gonzales,* 2001 WL at 1217224, at * 12).

The Court understands the motion to request bifurcation of Section 1983 claims brought against defendants sued in their individual capacities from the Section 1983 claims brought against the City of Binghamton and the individual defendants in their official capacities. *See Mathie v. Fries,* 121 F.3d 808, 818 (2d Cir.1997)("A claim against a government officer in his official capacity is, and should be treated as, a claim against the entity that employs the officer ....")(citing *Kentucky v. Graham,* 473 U.S. 159, 165-66 (1985)); *see Riley v. Town of Bethlehem,* 44 F.Supp.2d 451, 465 (N.D.N.Y.1999)("It is apodictic that claims against an individual in his official capacity are to be treated as claims against the municipality."). Based on Plaintiffs' consent, and a determination that judicial economy will be served by bifurcation, Defendants' motion to bifurcate the trial of the Section 1983 claims is **GRANTED.** If there is a need to try any of the Section 1983 claims against the

City of Binghamton in any of the four severed matters, the claims shall be tried back to back to the same jury.

**IV. CONCLUSION**

**\*6** For the reasons stated above, the defendants' motion to sever the plaintiffs' claims is **GRANTED** as follows. There shall be four separate trials. These trials shall involve: (1) all claims arising from the February 20, 2005 Sai Bless Inn incident; (2) all claims arising from the May 7, 2005 Sai Bless Inn incident; (3) all claims arising from the Green Incident; and (4) all claims arising from the July 4th Incident.

Defendants' motion to bifurcate the individual capacity Section 1983 claims from the Section 1983 claims against the City of Binghamton (including the official capacity claims against the individual defendants) is **GRANTED.** If there is a need to try any of the Section 1983 claims against the City of Binghamton in any of the four severed matters, the claims shall be tried back to back to the same jury.

**IT IS SO ORDERED**

N.D.N.Y.,2006.

Corporan v. City of Binghamton
Not Reported in F.Supp.2d, 2006 WL 2970495 (N.D.N.Y.)
END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Westlaw.

Slip Copy, 2009 WL 4907121 (S.D.N.Y.)

(Cite as: 2009 WL 4907121 (S.D.N.Y.))

**C**

Only the Westlaw citation is currently available.
United States District Court,

S.D. New York.
PROSPECT CAPITAL CORPORATION, Individually and derivatively on behalf of ESA Environmental Specialists, Inc., Plaintiff,
v.
Nathan M. BENDER, David C. Eppling, Jacob Cole, John M. Mitchell, Shelton Smith, Sandra Dee Cole, Michael Anthony Habowski, Dennis M. Molesevich, Tracey Hawley, Cherry Beckaert & Holland LLP, Elliot and Warren, Adkisson, Sherbert & Associates, Houlihan Smith, Chester J. Banull, and Suntrust Banks, Inc., Defendants.
No. 09 Civ. 826(HB).

Dec. 21, 2009.
West KeySummary **Federal Courts 170B** 🗝 **122**

170B Federal Courts

170BII Venue
170BII(B) Change of Venue
170BII(B)2 Venue Laid in Wrong Forum
170Bk122 k. Particular Determinations.
Most Cited Cases
    The United States District Court for the Southern District of New York lacked personal jurisdiction over a construction firm and thus, transfer of the case to the Western District of North Carolina was appropriate. The vast majority of the party and non-party witnesses were located in and around North Carolina. Further, the locus of the operative facts was in North Carolina, where the construction firm's alleged wrongdoing was alleged to have occurred. 28 U.S.C.A. § 1406(a).

**OPINION & ORDER**

Hon. HAROLD BAER, JR., District Judge.
    **\*1** Plaintiff Prospect Capital Corporation ("Prospect" or "Plaintiff") brought this multi-faceted action based on

a complaint that alleged, at its core, that it was induced to issue a loan to ESA Environmental Specialists, Inc. ("ESA"), an environmental, engineering and construction firm whose officers, directors and employees conspired to siphon off money and whose accountants and other professionals had provided negligent services in connection with procurement of the loan from Prospect. The Amended Complaint, filed on February 11, 2009, alleges a complex web of interrelated and unique causes of actions as follows: (1) fraud and negligent misrepresentation against Defendant Bender; (2) substantive and conspiracy RICO claims against Defendants Bender, Eppling, J. Cole, Mitchell, Smith, Mrs. Cole, Habowski and Molesevich (the "RICO Defendants") [FN1]; (3) derivative claims for breach of fiduciary duties and corporate waste against Bender, Eppling, J. Cole, Mitchell and Smith (the "ESA Officers & Directors"); (4) breach of contract against SunTrust Banks, Inc.; and (5) professional negligence against each of Houlihan Smith, Cherry Bekaert & Holland LLP, Elliot & Warren ("E & W"), Adkisson Sherbert & Associates ("AS & A") and Banull (the "Professional Defendants").

    FN1. The Amended Complaint contains allegations of certain conduct by Tracey Hawley ("Hawley"), who at the relevant times was an employee in ESA's accounting department; however, while Hawley is listed as a defendant in the caption of this action, she is not specifically listed as a defendant in any of the causes of action of the Amended Complaint. However, Prospect makes clear in its RICO Case Statement that it meant to include Hawley among the ranks of the RICO Defendants.

    All of the Defendants, other than SunTrust and Habowski,[FN2] have moved to dismiss the Amended Complaint as it relates to them, for numerous and varied reasons: (a) the ESA Officers & Directors, Mrs. Cole, Molesevich, Banull and E & W have moved to dismiss for lack of personal jurisdiction under Federal Rule 12(b)(2) and improper venue under Federal Rule 12(b)(3), or in the alternative to transfer venue pursuant to 28 U.S.C. § 1404(a); [FN3] (b) the Professional Defendants move to

Slip Copy, 2009 WL 4907121 (S.D.N.Y.)

(Cite as: 2009 WL 4907121 (S.D.N.Y.))

dismiss for lack of subject matter jurisdiction under Federal Rule 12(b)(1); and (c) all moving Defendants move to dismiss the claims against them for failure to state a cause of action under Federal Rule 12(b)(6). For the reasons set forth below, I find that venue is improper in the Southern District of New York, and thus the motions to transfer this action are granted.[FN4]

> **FN2.** SunTrust filed an answer to the Amended Complaint on May 5, 2009 but never participated in any motion practice. Habowski executed a waiver of service on March 9, 2009, but has not answered or otherwise responded to the Amended Complaint and is therefore in default.

> **FN3.** Defendants Cherry Bekaert and Houlihan did not move on either of these grounds and have therefore waived these two defenses; AS & A initially moved on both bases, but withdrew their personal jurisdiction objection in its reply. Although AS & A did not expressly withdraw its venue motion, its counsel has represented that it now consents to venue in this district.

> **FN4.** Although there are certain defendants who did not move to dismiss or transfer on the basis of venue, they noted no objection to the motions in their papers and did so at oral argument only upon probing from the Court. Accordingly, as discussed in further detail below, to preserve the basic fabric of this case, the claims as against these defendants likewise will be transferred as appropriate.

## I. FACTUAL BACKGROUND

The facts of this case, as alleged in the Amended Complaint and RICO Case Statement, are complicated and intricate, and need not, for purposes of these motions, be discussed at great length here. Suffice it to say that at all times relevant to the Amended Complaint, ESA operated as an environmental, engineering and construction firm that specialized in the provision of services to government entities. Prospect alleges that beginning no later than 2005, through a variety of interrelated schemes, Defendants, who together are either officers and directors, employees, or retained

professionals of the now-insolvent ESA,[FN5] conspired to siphon funds from ESA for their own benefit.

> **FN5.** On August 1, 2007, ESA filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Western District of North Carolina. Pursuant to a bankruptcy court-approved sale agreement, ESA sold substantially all of its assets, including litigation claims, to Prospect.

## II. DISCUSSION

As noted above, the Defendants have moved to dismiss the causes of action in the Amended Complaint for a variety of reasons, including on both jurisdictional and substantive grounds. Most significant to the Court are the arguments relating to (a) whether this Court may exercise personal jurisdiction over certain of the Defendants, and (b) whether the Southern District of New York is a proper venue in which this action may be heard. The Court acknowledges that in general, the issue of jurisdiction should be resolved before venue. *See Team Obsolete Ltd. v. A.H.R.M.A. Ltd.,* 01-CV-1574 (ILG), 2002 U.S. Dist. LEXIS 10737, at *9 (E.D.N.Y. Mar. 15, 2002) (citing *Leroy v. Great Western United Corp.,* 443 U.S. 179, 180 (1979)). However, a court may nonetheless address the issue of venue "where there are sound reasons to do so." *Saferstein v. Mardinly, Durham, James, Falndreau & Roger, P.C.,* 927 F.Supp. 731, 735 (S.D.N.Y.1996). Here, because I find that venue is improper in this district with respect to any of the moving defendants, I find that this Court may not hear this case, whether or not it has personal jurisdiction over the defendants.[FN6]

> **FN6.** It is worth noting, however, that it is doubtful that any of the Defendants who move on personal jurisdiction grounds is subject to personal jurisdiction in New York. The majority of the Defendants had no contact with New York whatsoever, and those who did had extremely limited contacts from which, in any event, Prospect's claims do not appear to have arisen. Moreover, without deciding, I must express my sincere doubt as to the viability of Prospect's argument that RICO's nationwide jurisdiction provision, 18 U.S.C. § 1965(b), can be used to cast a broad net over all Defendants. First, that

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 4907121 (S.D.N.Y.)

(Cite as: 2009 WL 4907121 (S.D.N.Y.))

provision applies only where "justice so requires," and Plaintiff has fallen far short of bearing its burden in that regard. Further, it seems extremely unlikely that to use RICO's nationwide service provision to subject defendants as to whom no RICO claim is made to personal jurisdiction in a state with which it has no service would comport with Due Process.

**A. Motions to Dismiss for Improper Venue (Rule 12(b)(3))**

**\*2** The RICO Defendants (other than Habowski, Banull, E & W and AS & A (the "Venue Defendants") have moved to dismiss the claims against them for improper venue under 28 U.S.C. § 1391(b) or, in the alternative, to transfer this action. All Venue Defendants other than Banull request that if the claims against them are not dismissed, they should be transferred to the Western District of North Carolina, where the vast majority of the acts and occurrences alleged took place and where ESA's bankruptcy proceeding is currently pending. Banull, on the other hand, is a solo practitioner property appraiser whose residence and business are exclusively in Pennsylvania and the allegations with respect to Banull involve his allegedly negligent appraisal of a piece of real property in Pennsylvania. Accordingly, Banull seeks severance of Count XII, the only claim against him, and transfer of that cause of action to the Eastern District of Pennsylvania. Prospect's opposition to the motion, which dedicates a mere one-page discussion to the venue issue, argues that venue is proper in this district because (a) it brought its case here, (b) a substantial portion of the events that give rise to the claims in the Amended Complaint occurred here, and (c) that transfer should be denied because the convenience of the witnesses puts it here.

*1. Legal Standard*

Prospect bears the burden to show that venue is proper as to each defendant for each cause of action it pleads. *City of N.Y. v. Cyco.net, Inc.,* 383 F.Supp.2d 526, 543 (S.D.N.Y.2005). To decide whether dismissal pursuant to Rule 12(b)(3) is appropriate, a court must take all allegations in the complaint as true, unless they are contradicted by the defendants' affidavits, "and when an allegation is so challenged, a court may examine facts

outside the complaint to determine whether venue is proper." *Indymac Mortgage Holdings, Inc. v. Reyad,* 167 F.Supp.2d 222, 237 (D.Conn.2001) (quoting *United States Envtl. Prot. Agency v. Port Auth. of N.Y. & N.J.,* No. 00 Civ. 0714(WHP), 2001 WL 333014, at \*4 (S.D.N.Y. Mar.30, 2001)).

The venue provision on which Prospect bases its argument that venue is proper in this district is 28 U.S.C. § 1391(b),[FN7] which applies in all cases such as this where jurisdiction is not based solely on diversity of citizenship. The statute provides that venue is proper in any district (1) where all defendants reside, (2) in which "a substantial part of the events or omissions giving rise to the claim occurred," or (3) in any district in which any defendant may be found, if the action cannot be brought in any other district. 28 U.S.C. § 1931(b). Prospect does not argue that any defendant-let alone all defendants-resides in the Southern District of New York, nor does it argue that any defendant can be found here or that the action cannot be brought in any other district. Accordingly, Prospect's venue argument must be premised on § 1391(b)(2), and as such venue will be proper if and only if Prospect shoulders its burden to show that "a substantial part of the events or omissions giving rise to the claim[s] occurred" in this district.

> **FN7.** While Prospect bases its entire argument as to venue on 28 U.S.C. § 1391(b), in the Amended Complaint, it also used RICO's venue provision, 18 U.S.C. § 1965(a). This provision is supplemental to the general venue provision of § 1391; thus, venue may lie in accordance with either statute. *See* Cyco.net, 383 F.Supp.2d at 543-44. Because none of the parties address this alternative basis for venue over the RICO claims, and because Prospect itself does not appear to premise the propriety of venue in this district on that statute, I need not address it here. However, it is worth noting that venue for a RICO claim is proper under § 1965(a) only where at least one defendant "resides, is found, has an agent, or transacts his affairs." 18 U.S.C. § 1965(a). There can be no dispute that none of the RICO defendants resides, can be found or has an agent in this district-indeed, they are all individuals whose residence and/or business ventures are in

Slip Copy, 2009 WL 4907121 (S.D.N.Y.)

(Cite as: 2009 WL 4907121 (S.D.N.Y.))

either North Carolina, South Carolina or Pennsylvania. The phrase "transacts his affairs" has been found to be synonymous with the test for transacting business under N.Y. C.P.L.R. § 302. *See Cyco .net, Inc.,* 383 F.Supp.2d at 541-42. For venue to be proper under that subsection of § 1965, a defendant must have "transact[ed] his affairs" in the district at the time the complaint was filed. *See, e.g., Gates v. Wilkinson,* 01 Civ. 3145(GBD), 2003 U.S. Dist. LEXIS 9417, at *5, 2003 WL 21297296 (S.D.N.Y. June 4, 2003). As will be discussed in detail, very few of the Venue Defendants transacted any business in New York at all, and those who did, the allegations as to their contact with New York was limited, sporadic and extended no further than mid-2007. Accordingly, there is no indication that any defendant was "transact[ing] his affairs" in January 2009, when this action was filed.

**\*3** To be sure, venue can be proper in more than one district; that is, venue is not restricted to the district with the "most substantial" connection to the events or omissions related to a claim. *See Daniel v. American Bd. of Emergency Med.,* 428 F.3d 408, 432 (2d Cir.2005). Nevertheless, the "substantial events or omissions" test limits the number of proper venues "to protect the *defendant* against the risk that a plaintiff will select an unfair or inconvenient place of trial." *Id.* (quoting *Leroy,* 443 U.S. at 183-84) (emphasis in original).

Plaintiff's venue argument is based on the contention that Prospect has its principal office in New York City and that it was solicited to provide the loans and performed its due diligence in this district. Thus, Prospect pulls itself up by its own bootstraps and argues that this district is proper because it is present here. Unfortunately for Prospect, the Second Circuit recently has made clear that when a court examines the question of whether venue in a forum is proper, it must focus on where the *defendant's* acts or omissions occurred. *See, e.g., Daniel,* 428 F.3d at 432; *see also Woodke v. Dahm,* 70 F.3d 983-985 (8th Cir.1995) (explaining that "by referring to 'events and omissions giving rise to the claim,' Congress meant to require courts to focus on relevant activities of the defendant, not of the

plaintiff") (cited with approval in *Daniel,* 428 F.3d at 432). Accordingly, the Court turns to the alleged acts and omissions of each of the Venue Defendants to determine whether venue in this district is proper as to any of them.

*2. RICO Defendants*

The core allegations of the Amended Complaint are that the RICO Defendants conspired to and did violate RICO through commission of predicate acts of mail and wire fraud. Specifically, Prospect alleges that (1) in January and February 2005 and again in February and March 2006, Charles and Mrs. Cole used the mails and wires to negotiate, finalize and close the "improvement loan" and the "construction loan" on the Baxter Property; (2) in July 2006, Habowski submitted his fraudulent invoice and made other wrongful payments to ESA through the mails and wires; (3) between December 2006 and May 2007, the ESA Officers & Directors used the mail and wires to transmit numerous financial documents, including the Confidential Offering Memorandum, to Prospect; (4) ESA's wrongful payments to CEP in 2006 and 2007 were made by mail; (5) fraudulent invoices from Molesevich to ESA were sent by mail and wires; and (6) the RICO defendants used the wires to negotiate, finalize and close the Credit Agreement with Prospect and the amendments thereto. Prospect further alleges that on the day the Credit Agreement closed, ESA caused funds to be wired from New York to North Carolina and Pennsylvania to pay off previous loans made to CEP. The only allegation that underlies the RICO claims that involves any acts or omissions in this district is ESA's wiring of funds into North Carolina and Pennsylvania; however, there is no allegation as to which, if any, of the ESA Officers & Directors or RICO Defendants was responsible for the transfer, and in any event in the context of the entire RICO claim, a single wire transfer of funds is not a "substantial act" sufficient to confer venue. The allegations thus make plain that the substantial events that gave rise to the RICO causes of action took place in North Carolina and Pennsylvania. A closer examination of each of the RICO Defendants' acts and omissions brings this conclusion into even sharper focus:

**\*4** *(a)* Bender is alleged to reside in Fort Mill, South Carolina. At all times relevant to the Amended Complaint, he was the President and a director of ESA, a North

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 4907121 (S.D.N.Y.)

(Cite as: 2009 WL 4907121 (S.D.N.Y.))

Carolina company. Bender is alleged also to have contacted Prospect in New York on 200 occasions by email, 40 occasions by telephone and participated in regular conference call with Prospect between April 2007 and June 2007. *See* Affidavit of J. Barry ("Barry Aff.") ¶ 4-7. Bender also visited this district to meet with Prospect on February 13, 2007, March 15, 2007 and July 3, 2007. *Id.* ¶ 13.

(b) Eppling is alleged to reside in Jacksonville, Florida. At all relevant times, he was the Marketing Procurement Officer and a director of ESA. Prospect alleges that Eppling contacted it in this district at least 100 times by email and 25 times by telephone, and participated in regular conference calls between September and December 2007. *See* Barry Aff. ¶ 6. Eppling also traveled to New York on March 15, 2007. *Id.* ¶ 9.

(c) J. Cole is Charles Cole's brother and is alleged to reside in Pennsylvania. At all relevant times, he was Vice President of Operations of ESA. Prospect alleges that J. Cole contacted it by email at least 25 times and by phone 8 times; J. Cole also allegedly participated in regular conference calls between October and December 2007 and traveled to New York on February 13, 2007. *See* Barry Aff. ¶ 5, 10.

(d) Mitchell is alleged to reside in Charlotte, North Carolina. Mitchell became Chief Financial Officer of ESA in approximately April 2007. Mitchell alleged to have contacted Prospect in this district by email 400 times, and on at least 50 occasions by phone, and he participated in regular conference calls with Prospect between January and March 2008. *See* Barry Aff. ¶ 8, 13-14.

(e) Smith is alleged to reside in North Carolina. At all relevant times, Smith was Comptroller of ESA. Neither the Amended Complaint, RICO Statement nor Barry Affidavit contains any allegations of any acts or conduct by Smith in this district.

(f) Hawley is alleged to reside in North Carolina. At all relevant times, Hawley was an employee of ESA in its accounting department. Prospect alleges that Hawley contacted it by email at least 40 times and by phone 30 times, and participated in regular conference calls with

Prospect between January and March 2008. *See* Barry Aff. ¶ 12, 14.

(g) Mrs. Cole is a homemaker alleged to reside in Abilene, Texas. Mrs. Cole is allegedly a principal of CEP, which are North Carolina companies with their principal places of business in North Carolina. Neither the Amended Complaint nor the RICO Case statement contains any allegations that ties Mrs. Cole's acts or omissions to this district. As is set forth in the Declaration of Sandra Dee Cole ("Cole Decl."), Mrs. Cole has no contacts with this district, nor has any of the alleged RICO enterprises with which Mrs. Cole is alleged to be associated (CEP and Seedco). *See* Cole Decl. ¶ 12-13. Neither the Amended Complaint, RICO Statement nor Barry Affidavit contains any allegations of any acts or conduct by Mrs. Cole in this district.

**\*5** (h) Molesevich is alleged to reside in Mount Carmel, Pennsylvania. Molesevich is alleged to be the sole shareholder of Molesevich Construction Corporation, a Pennsylvania corporation with its principal place of business in Pennsylvania. He is also alleged in the RICO Case Statement to be President of the Seedco entities, which are organized under the laws of either Pennsylvania or Delaware with a principal place of business in Pennsylvania. Molesevich has no contacts with this district; rather, he performs local construction projects and has never engaged in business outside of Pennsylvania. *See* Declaration of Dennis Molesevich ("Molesevich Decl.") ¶ 6. With respect to the allegations against him, Molesevich did construction on the Parent Center located in Northumberland County, Pennsylvania, for which he submitted invoices to Charles Cole in North Carolina. *Id.* ¶ 7. These invoices were paid by moneys sent to Molesevich from North Carolina by individuals associated with ESA, as well as by a law firm called Varano & Cole, located in Northumberland County. *Id.* ¶¶ 7-8. At no time was Molesevich aware of the business relationship between Prospect, Charles Cole and ESA, nor did he ever have any dealings directly with Prospect. *Id.* ¶ 9. Neither the Amended Complaint, RICO Statement nor Barry Affidavit contains any allegations of any acts or conduct by Molesevich in this district.

Viewed in context of this entire case, the telephone

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 4907121 (S.D.N.Y.)

(Cite as: 2009 WL 4907121 (S.D.N.Y.))

calls and emails by Bender, Eppling, J. Cole and Hawley into the Southern District of New York were only an insignificant part of the acts or omissions giving rise to the claims against these Defendants. *See Daniel,* 428 F.3d at 434. Thus, they are insufficient to afford venue in this district under § 1391(b)(2). Moreover, the majority of the regular calls and visits that Prospect alleges underlie its claims against these defendants occurred after the Credit Agreement closed and after ESA filed for bankruptcy. Thus, it is difficult to see how they could form the basis of a "substantial part" of the acts or omissions that give rise to Prospect's claims, as those claims all arose *before* any of the conduct alleged. There are absolutely no contacts with this district alleged for any of the remaining RICO Defendants, and thus venue is improper as to the claims against them as well.

### *3. E & W*

The only cause of action brought against E & W is for professional negligence. E & W is alleged to be a professional liability company with its address in North Carolina. Neither the Amended Complaint, RICO Statement nor Barry Affidavit contains any allegations of any acts or conduct by E & W in this district. Indeed, E & W's services were performed wholly within North Carolina on behalf of a North Carolina client. As such, there is no basis to find that venue is proper as to the single cause of action alleged against E & W.

### *4. AS & A*[FN8]

> **FN8.** As noted above, AS & A's opening brief contained arguments in support of dismissal on both personal jurisdiction and venue grounds. In its reply, AS & A expressly withdrew its objection to personal jurisdiction. It did not, however, withdraw its venue argument until oral argument, when its counsel represented that it consents to venue in this district.

The only cause of action brought against AS & A is for professional negligence. AS & A is a professional corporation incorporated in North Carolina. *See* Affidavit of William R. Sherbert ("Sherbert Aff.") ¶ 5. AS & A dissolved on December 31, 2007; until that time, it had its principal place of business in Charlotte, North Carolina. In or about May 2006, AS & A was engaged by ESA to

provide certain accounting services. *Id.* ¶ 6. These services were performed in North Carolina and were provided solely to ESA. *Id.* ¶ 8. AS & A was not aware of Prospect or its relationship with ESA, and at not time did AS & A provide any accounting services to Prospect. *See id.* ¶ 9. Prospect alleges that AS & A contacted Prospect by telephone on three occasions to discuss write-offs and adjustments related to financial statements that it prepared in connection with Prospect's loans to ESA. *See* Barry Aff. ¶ 29. Here, this minimal contact with Prospect is certainly not sufficient to confer venue over the sole claim against AS & A, *Daniel,* 428 F.3d at 434; rather, like E & W, it is clear that AS & A's services were rendered wholly within North Carolina on behalf of a North Carolina client, and there is therefore no basis for venue over this claim in this district.

### *5. Banull*

**\*6** The only cause of action brought against Banull is for professional negligence. Banull is alleged to reside in Scranton, Pennsylvania. Banull has never worked in New York, and the two appraisals that he performed on behalf of his client Seedco was for property in Pennsylvania. *See* Affidavit of Chester J. Banull ("Banull Aff.") ¶ 15-17. In connection with those appraisals, Banull communicated with Seedco personnel in Pennsylvania and North Carolina only. *See id.* ¶ 19. Neither the Amended Complaint, RICO Statement nor Barry Affidavit contains alleges any acts or conduct by Banull in this district. Rather, Banull's services were rendered solely in Pennsylvania on behalf of a Pennsylvania client; if he had contact with any other entity outside of Pennsylvania, it was with ESA and/or its employees in North Carolina, and not with Prospect in New York.

\* \* \*

The nub of the Amended Complaint involves the alleged siphoning off of funds from ESA and the retention of professionals to secure loans from Prospect, loans they knew or should have known were destined for a defunct entity. Virtually no conduct by any Venue Defendant actually occurred in or was directed to this district. Accordingly, I conclude that venue is improper in this district under Federal Rule 12(b)(3).

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 4907121 (S.D.N.Y.)

(Cite as: 2009 WL 4907121 (S.D.N.Y.))

## B. Dismissal or Transfer of Venue

When a court finds that venue is improper in the district in which it sits, it has broad discretion to determine whether to dismiss the action or transfer it to a district in which venue would be proper. *See Minnette v. Time Warner*, 997 F.2d 1023, 1026 (2d Cir.1993); *see also Murphy v. Bradley*, No. 3:03CV714(DJS), 2004 U.S. Dist. LEXIS 1074, at *, 2004 WL 202419 (D.Conn. Jan. 16, 2004) (quoting *Concession Consultants, Inc. v. Mirisch*, 355 F.2d 369, 371-72 n. 3 (2d Cir.1966)) ("[W]here the motion asks only that the suit be dismissed, the court may properly, sua sponte, order it transferred [pursuant to 28 U.S.C. § 1406(a) ]."); *see also Songbyrd, Inc. v. Grossman*, 206 F.3d 172, 179 n. 9 (2d Cir.2000) (citing *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466, 82 S.Ct. 913, 8 L.Ed.2d 39 (1962)). A court's discretion in deciding whether to dismiss or transfer under § 1406(a) is informed by, *inter alia*, the convenience of the parties, ease of access to sources of proof, and the desirability of expeditious litigation and concerns of judicial economy. *See Cavit Cantina Viticoltori Consorzio Cantine Sociali del Trentino Societa Cooperativa v. Browman Family Vineyards, Inc.,* 09 Civ. 2192(JSR), 2009 U.S. Dist. LEXIS 8889, at *14 (S.D.N.Y. Sept. 28, 2009). Moreover, as several courts have noted, in cases such as this where there are open motions that go to substantive issues that relate to the merits of a claim, transfer is preferable to dismissal so that the transferee court can address the substantive claims. *See, e.g ., Pardy v. Gray,* No. 06-CV-6801, 2007 U.S. Dist. LEXIS 45428, at *12 (E.D.N.Y. June 21, 2007); *Andrade v. Chojnacki*, 934 F.Supp. 817 825 (S.D.Tex.1996) (quoting *Gold v. Scurlock*, 290 F.Supp. 926, 929 (S.D.N.Y.1968)).

**\*7** With respect to the Venue Defendants, it is plain that all claims other than the professional negligence claim against Banull belong in the Western District of North Carolina. With respect to Banull, it appears that severance of Claim XII is appropriate so that the claim can be transferred to the Eastern District of Pennsylvania.[FN9] Severance of claims is governed by Rule 21 of the Federal Rules of Civil Procedure. The relevant factors to consider to determine whether severance is appropriate are: (1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present some common questions of law or fact; (3) whether settlement of the

claims or judicial economy would be facilitated; (4) whether prejudice will be avoided if severance were granted; and (5) whether different witnesses and documentary proof are required for the separate claims. *See In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.,* 247 F.R.D. 420, 424 (S.D.N.Y.2007). Courts often sever claims against certain defendants to accomplish transfer to venues where adjudication of the claims is appropriate. *See, e.g., Wyndam Assocs. v. Bintliff,* 398 F.2d 614, 618 (2d Cir.1968); *Dover Ltd. v. Assemi,* No. 08 Civ. 1337(LTS)(JCF), 2009 U.S. Dist. LEXIS 70527, at *10-11, 2009 WL 2870645 (S.D.N.Y. Aug. 5, 2009). Severance of discrete claims "is particularly appropriate where, as here, a small party would be forced to participate in a case in which their claims are yoked to much larger claims involving" numerous witnesses and substantial discovery. *Adelphia Recovery Trust v. Bank of Am.,* 05 Civ. 9050(LMM), 2009 U.S. Dist. LEXIS 39373, at * (S.D.N.Y. Mar. 5, 2009), 2009 WL 636719 . Here, the only claim against Banull is based on an allegation that he negligently appraised real property in Pennsylvania. This claim does not arise out of the same facts as the claims against any of the other Defendant, nor does it present similar factual or legal issues. Moreover, Banull, as a sole proprietor, would likely be prejudiced by the significant discovery and lengthy proceedings that are likely to come of Plaintiff's RICO claims, and thus severance promotes judicial economy. Accordingly, the sole claim against Banull will be severed and transferred to the Eastern District of Pennsylvania.

> FN9. Although Banull did not expressly brief the issue of whether severance is appropriate in his opening papers, a court may order severance of a party or claim under Rule 21 of the Federal Rules of Civil Procedure *sua sponte. See* Fed.R.Civ.P. 21 (noting that a court may sever a claim or party "[o]n motion or on its own"); *Deajess Med. Imaging, P.C. v. Allstate Ins. Co.,* No. 03 Civ. 3916(LTS)(MHD), 2004 U.S. Dist. LEXIS 17125, at * 17, 2004 WL 1920803 (S.D.N.Y. Aug. 27, 2004).

The court having determined that transfer is appropriate for each of the moving Venue Defendants, the

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 4907121 (S.D.N.Y.)

(Cite as: 2009 WL 4907121 (S.D.N.Y.))

question remains as to how to address the defendants who did not move on this ground. Here, both Cherry Bekaert and Houlihan [FN10] have waived the defense of improper venue by failing to raise it in their first response to the Amended Complaint. SunTrust has not waived the defense, as it was raised in SunTrust's answer as an affirmative defense. However, none of the non-moving Defendants, having notice of the Venue Defendants' motion, voiced any objection to transfer in their papers or otherwise; indeed, the only indication of any such objection was made upon the Court's questioning at oral argument.[FN11] This new concern, having been expressed for the first time at oral argument, need not be considered here. *See In re Monster Worldwide, Inc. Sec. Litig.*, 251 F.R.D. 132, 137 (S.D.N.Y.2008); *accord Smith v. Cuomo*, 306 Fed. Appx. 645, 647 (2d Cir.2009); *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 300 (2d Cir.2006).

> FN10. Again, AS & A took the surprising position at oral argument that it consents to venue in the Southern District of New York, notwithstanding its having made a motion under Rule 12(b)(3) and having failed to expressly withdraw that motion in any of its papers. In any event, based on the motion that the Court understands AS & A to have made, I have found that venue is improper as to AS & A, as discussed above.

> FN11. The Court specifically asked whether any of the non-moving Defendants objected to transfer, to which counsel for Defendants Cherry Bekaert, Houlihan and AS & A responded that they did object; counsel for SunTrust did not make any response to the Court's question.

*8 Even if the Court were to assume that venue would be proper as to the three non-moving Defendants, 28 U.S.C. § 1404(a) grants the district court the authority to transfer a claim or action *sua sponte*, even if the defense of improper venue has been waived. *See, e.g., Guccione v. Harrah's Marketing Servs. Corp.*, 06 Civ. 4361(PKL), 2009 U.S. Dist. LEXIS 65388, at * 5 n. 5, 2009 WL 2337995 (S.D.N.Y. July 29, 2009); *see also Lead Indus. Ass'n v. Occupational Safety & Health Admin.*, 610 F.2d 70, 79 n. 17 (2d Cir.1979). Under § 1404(a), a court may,

"[f]or the convenience of the parties and witnesses, in the interest of justice, ... transfer any civil action to any other district or division where it might have been brought." [FN12] The factors the court should consider include: (1) the convenience of the witnesses; (2) the availability of process to compel the attendance of unwilling witnesses; (3) the convenience of the parties; (4) the locus of operative facts; (5) the location of relevant documents and relative ease of access to sources of proof; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded to the plaintiff's choice of forum; and (9) trial efficiency and the interests of justice. *Emerging Vision, Inc. v. For Eyes Optical Co.*, 06 Civ. 5823, 2009 U.S. Dist. LEXIS 26493, at *10, 2009 WL 702243 (S.D.N.Y. Mar. 16, 2009) (citing, *inter alia, D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 106-07 (2d Cir.2006)). Taking these factors into account-and especially considering that it appears the vast majority of witnesses (both party and non-party) are located in and around North Carolina; the locus of operative facts is in North Carolina, where the Defendants' wrongdoing is alleged to have occurred; the difficult questions relating to choice of law and the interaction of this case with ESA's pending bankruptcy; and the fact that the claims against the Venue Defendants will also be transferred-this Court finds, in its broad discretion, that transfer of all claims (other than the claim against Banull) to the Western District of North Carolina is warranted. This conclusion is bolstered by considerations of judicial economy, as the North Carolina court will then be in a position to decide whether any of the claims against any of the Defendants can survive a motion to dismiss under Rule 12(b)(6).

> FN12. With respect to whether this action "could have been brought" in the Western District of North Carolina, it is worth noting that at oral argument, Prospect's counsel expressly conceded that all of its claims could be litigated in North Carolina. *See* Transcript of Oral Argument at 30:8-9 ("Could this be tried in North Carolina? Absolutely. Could it? Of course. We're not denying that North Carolina could be a proper venue.") Indeed, the only impediments that Prospect noted with respect to transfer to North Carolina is the potential objection, unarticulated by any of the defendants, that Defendants

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 4907121 (S.D.N.Y.)

(Cite as: 2009 WL 4907121 (S.D.N.Y.))

Habowski and Molesevich might not be subject to personal jurisdiction there. Habowski has defaulted and thus has abdicated his ability to object to personal jurisdiction. Molesevich, though he is a Pennsylvania resident, allegedly directed much of his activities toward companies that are alleged to be RICO enterprises and had significant contact with ESA and the ESA Officers & Directors, and thus I see no reason why he should not be subject to personal jurisdiction in North Carolina.

### III. CONCLUSION

For the foregoing reasons, the Defendants' motions to transfer venue are GRANTED. The Clerk of this Court is instructed to sever Count XII for professional negligence against Banull and transfer it to the Eastern District of Pennsylvania. The Clerk is further instructed to transfer the remaining causes of action against all Defendants to the Western District of North Carolina. Finally, the Clerk of this Court is directed to remove this case from my docket.

**IT IS SO ORDERED.**

S.D.N.Y.,2009.

Prospect Capital Corp. v. Bender
Slip Copy, 2009 WL 4907121 (S.D.N.Y.)
END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.2d, 2008 WL 586419 (E.D.Tenn.)

(Cite as: 2008 WL 586419 (E.D.Tenn.))

**c**

Only the Westlaw citation is currently available.
United States District Court, E.D. Tennessee.

GLOBE AMERICAN CASUALTY CO., Plaintiff,
v.
Ronald DAVIS, Bobby Cross, Tracy Lanning, Andrew
Lanning, E.L., Deborah Lanning, Ronnie Lanning, and
Brandi Lanning, Defendants.
No. 1:07-cv-232.

Feb. 27, 2008.

Sean W. Martin, Wayne Dooley Charles, Leitner, Williams, Dooley and Napolitan, PLLC, Chattanooga, TN, for Plaintiff.

Patrick A. Cruise, Hubert E. Hamilton, The Hamilton Firm, Chattanooga, TN, for Defendants.

### ORDER

CURTIS L. COLLIER, Chief Judge.

**\*1** On February 11, 2008, United States Magistrate Judge Susan K. Lee filed a report and recommendation ("R & R") in this case pursuant to 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b) (Court File No. 34). Neither party has objected to the R & R within the given ten (10) days.

After reviewing the record, this Court agrees with the R & R. This Court hereby **ACCEPTS** and **ADOPTS** the magistrate judge's findings of fact, conclusions of law, and recommendations.

Accordingly, this Court **ORDERS**:

(1) Plaintiff Globe American Casualty Co.'s ("Globe's") claims against defendant Ronald Davis ("Davis") and defendant Bobby Cross ("Cross") be **SEVERED** from its claims against all other Defendants under Fed.R.Civ.P. 21;

(2) The order of reference as to Globe's claims against Davis and Cross (Court File No. 27) be

**WITHDRAWN;**

(3) Globe's motion for entry of a default judgment against Davis pursuant to Fed.R.Civ.P. 55(b) (Court File No. 23) be **GRANTED** and any interest or entitlement by Davis to the funds deposited by Globe into the registry of this Court be **TERMINATED;** and,

(4) Globe's motion for entry of a default judgment against Cross, pursuant to Fed.R.Civ.P. 55(b) (Court File No. 25) be **GRANTED** and any interest or entitlement by Cross to the funds deposited by Globe into the registry of this Court be **TERMINATED.**

**SO ORDERED.**

### *REPORT AND RECOMMENDATION*

SUSAN K. LEE, United States Magistrate Judge.
**I. Introduction**
    Before the Court in this interpleader action are the motions of Plaintiff Globe American Casualty Insurance ("Globe") pursuant to Fed.R.Civ.P. 55(b) for entry of default judgment against Defendant Ronald Davis ("Davis") [Doc. 23] and Defendant Bobby Cross ("Cross") [Doc. 25]. All non-defaulting parties consented to the exercise of jurisdiction by the magistrate judge and an order of reference was issued by the district judge [Doc. 27].

    An evidentiary hearing on Globe's motions for default judgements and a hearing to approve a proposed consent final judgment as to Defendant E.L., a minor ("E.L."), was held on February 8, 2008. Present at the hearing were: (1) attorney Sean W. Martin ("Martin") for Globe; (2) attorney Hubert E. Hamilton, III, for Defendants Tracy Lanning, Andrew Lanning, Deborah Lanning, Ronnie Lanning, Brandi Lanning, and E.L. (collectively the "Lanning Defendants"); (3) Defendant Tracy Lanning; and (4) Defendant Andrew Lanning. Although notice of the hearing was issued, Defendants Davis and Cross did not appear for, and were not represented at, the hearing.

    For the reasons stated herein, I **RECOMMEND** that:

Not Reported in F.Supp.2d, 2008 WL 586419 (E.D.Tenn.)

(Cite as: 2008 WL 586419 (E.D.Tenn.))

(1) Globe's claims against Davis and Cross be **SEVERED** from Globe's claims against the Lanning Defendants under Fed.R.Civ.P. 21; (2) the order of reference as to Globe's motions for default judgment against Davis and Cross be **WITHDRAWN;** (3) Globe's motion for entry of a default judgment against Davis, which terminates any interest or entitlement by Davis in the funds deposited by Globe into the registry of this Court, be **GRANTED;** and (4) Globe's motion for entry of a default judgment against Cross, which terminates any interest or entitlement by Cross in the funds deposited by Globe into the registry of this Court, be **GRANTED.**

**II. Background**

   *2 Globe filed this action for interpleader on October 4, 2007 [Doc. 1]. Globe timely served all of the Defendants named in its complaint [Doc. 2-9 & 11]. On October 29, 2007, the Lanning Defendants filed an answer [Doc. 10], but neither Davis nor Cross filed an answer or other responsive pleading to the complaint. On December 27, 2007, Globe moved for entry of default against Davis and Cross under Fed.R.Civ.P. 55(a) [Doc. 17 & 19]. The Clerk entered default under Rule 55(a) as to Davis and Cross on January 15, 2008 [Doc. 20 & 21]. On January 21, 2008, Globe moved for entry of default judgment under Fed.R.Civ.P. 55(b) against Davis and Cross [Doc. 23 & 25].FN1

     FN1. On December 27, 2007, Globe also moved for entry of default against former Defendant K.H., a minor ("K.H."), under Fed.R.Civ.P. 55(a) [Doc. 18]. The Clerk entered a default under Rule 55(a) as to K.H. on January 15, 2008 [Doc. 22]. On January 21, 2008, Globe moved for entry of a default judgment under Fed.R.Civ.P. 55(b) against K.H. [Doc. 24]. On February 5, 2008, Globe filed a motion to withdraw its motion for a default judgment as to K.H. [Doc. 28] and a motion to set aside the entry of default against K.H. [Doc. 29]. On February 7, 2008, both Globe's motion to set aside the entry of default against K.H and its motion to withdraw its motion for a default judgment as to K.H. were granted and Globe's motion for a default judgment as to K.H. was stricken as moot [Doc. 32]. Also on February 7,

2008, Globe filed a notice of voluntary dismissal without prejudice as to K.H. pursuant to Fed.R.Civ.P. 41(a)(1) [Doc. 33].

   A tragic multivehicle accident resulted in the filing of this matter and the interpleading of funds. Globe alleges it issued an automobile insurance policy covering a 2001 Dodge truck [Doc. 1 at 1, ¶ 2]. The insurance policy has limits of $25,000.00 bodily injury per person with a maximum liability per occurrence of $50,000.00 [*id.*]. Globe asserts in this interpleader action that the Defendants are adverse claimants to the insurance policy at issue [*id.* at 2, ¶ 12]. The insurance proceeds, $50,000.00, has been paid into the registry of this Court [*id.*].

   Globe's alleges that on or about November 22, 2006, Freddie Ruth was operating the 2001 Dodge truck insured by Globe in Bradley County, Tennessee [*id.* at 3, ¶ 14]. Defendants Cross and K.H. were passengers in the truck driven by Ruth [*id.*]. Freddie Ruth was involved in an accident with a vehicle driven by Defendant Davis and another vehicle operated by Defendant Brandi Lanning [*id.* at ¶ 15]. Defendants Tracy Lanning, Deborah Lanning and E.L. were passengers in the vehicle being operated by Defendant Brandi Lanning [*id.* at ¶ 16]. Defendant Brandi Lanning died at the scene [*id.* at 17].

   Globe's complaint further states:

18. Tracy Lanning and her husband Andrew Lanning have made a claim to Globe for personal injury.

19. Deborah Lanning and her husband Ronnie Lanning have made a claim to Globe for personal injury.

20. There remain additional potential claims by Brandi Lanning (by her parents Ronnie and Deborah Lanning), E.L. (by and through his parents Tracy and Andrew Lanning), Bobby Cross and K.H. (by and through her mother Nicole Hicks).

21. Since the remaining policy limits are insufficient to satisfy all of these claims, plaintiff is in great doubt as to how much each defendant is entitled to be paid for their respective claims.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 586419 (E.D.Tenn.)

(Cite as: 2008 WL 586419 (E.D.Tenn.))

[*Id.*].

**III. Analysis**

**A. Severability of Claims Against Davis and Cross**

As noted, Globe and the Lanning Defendants have consented to the exercise of jurisdiction by the magistrate judge. However, neither Davis nor Cross has given an unequivocal indication of his consent to the exercise of jurisdiction by the magistrate judge. It appears, however, that the claims against Davis and Cross are severable from the claims against the Lanning Defendants pursuant to Fed.R.Civ.P. 21,[FN2] which provides, in pertinent part, "[a]ny claim against a party may be severed and proceeded with separately."

> **FN2.** Severance of claims under Fed.R.Civ.P. 21, rather than Fed.R.Civ.P. 42(b), is the correct approach in this situation. Rule 42(b) permits a court to consider some of the claims or issues separately, while holding other claims or issues in abeyance, in a single lawsuit. *In re Zyprexa Products Liability Litigation,* No. MDL 1596, 04-cv-165, 2004 WL 2812095, * 3 (E.D.N.Y. Dec.3, 2004). On the other hand, severance of claims under Rule 21 results in the creation of separate actions. *Id.* Rule 21 also permits a court to sever claims *sua sponte. United States v. National R.R. Passenger Corp.,* No. CIV.A. 86-1094, 2004 WL 1335723, * 6 (E.D.Pa.2004).

**\*3** "The power to sever claims is committed to the discretion of the district courts." *Boston Post Road Medical Imaging, P.C. v. Allstate, Ins.,* No. 03 Civ. 3923(RCC), 2004 WL 1586429, * 1 (S.D.N.Y. July 15, 2004) (citing *New York v. Hendrickson Bros.,* 840 F.2d 1065, 1082 (2d Cir.1988)). The factors considered by courts in deciding to sever claims in a civil suit include:

(1) whether the claims arise out of the same transaction or occurrence;

(2) whether the claims present common questions of fact or law;

(3) whether severance would serve judicial economy;

(4) whether prejudice to the parties will be caused by severance; and

(5) whether the claims involve different witnesses and evidence.

*Id.; In re Zyprexa Products Liability Litigation,* 2004 WL 2812095, \*4.

In *Jones v. City of St. Louis,* 217 F.R.D. 490, 490 (E.D.Mo.2003), the plaintiff brought an action against the City of St. Louis ("City") and Bill's Towing Service ("BTS"). BTS was dismissed without prejudice under Fed.R.Civ.P. 4(m) for lack of effective and timely service, but was eventually brought into the action. *Id.* Plaintiff and the City consented to the exercise of jurisdiction by a magistrate judge under 28 U.S.C. § 636(c), but BTS made no appearance and filed nothing with the court. *Id.* The plaintiff moved to sever the claims against BTS and reassign them to a district judge in order to permit his claims before the magistrate judge to proceed. *Id.* at 491. The court severed the claims against BTS and the claims against the City proceeded before the magistrate judge. *Id.* A similar results seems appropriate here given the history of the legal proceedings and the current status of the case.

Accordingly, I **RECOMMEND** that: (1) Globe's claims against Davis and Cross be **SEVERED** from Globe's claims against the Lanning Defendants under Fed.R.Civ.P. 21, and (2) the order of reference as to claims against Davis and Cross [Doc. 27] be **WITHDRAWN.** Thus, I will proceed to address the motions for entry of default judgment against Cross and Davis on the basis of a report and recommendation to the district judge.

**B. Default Judgment as to Davis and Cross**

"Under 28 U.S.C. § 1335, a district court has jurisdiction of any civil action of interpleader involving money or property worth $500 or more where two or more adverse claimants, of diverse citizenship as defined in 28 U.S.C. § 1332, 'are claiming or may claim to be entitled to such money or property,' if the plaintiff has deposited

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 586419 (E.D.Tenn.)

(Cite as: 2008 WL 586419 (E.D.Tenn.))

the money or property with the court." *Sun Life Assur. of Canada, (U.S.) v. Conroy,* 431 F.Supp.2d 220, 224-25 (D.R.I.2006) (quoting *New York Life Ins. Co. v. Connecticut Dev. Auth.,* 700 F.2d 91, 95 (2nd Cir.1983) (quoting 28 U.S.C. § 1335)). The interpleader statute requires *inter alia* that the stakeholder point to 'two or more adverse claimants' who 'are claiming or may claim' the same money or property that the stakeholder has deposited into court." *Metropolitan Property and Cas. Ins. Co. v. Shan Trac, Inc.,* 324 F.3d 20, 23 (1st Cir.2003) (quoting 28 U.S.C. § 1335(a)(1)).

**4** Globe satisfied the requirements of 28 U.S.C. § 1335 as it identified two or more adverse claimants (the Lanning Defendants and Davis, Cross and K.H.) to the insurance proceeds it deposited into the registry of this Court. Based upon the allegations, the diversity requirements of 28 U.S.C. § 1332 are satisfied as the complaint indicates Davis and Cross are citizens and residents of Tennessee [Doc. 1 at 1-2, ¶¶ 3-4] and the Lanning Defendants are citizens and residents of Georgia [*id.* at 2, ¶¶ 6-11]. Therefore, I **FIND** Globe's complaint states a claim for relief under the interpleader statute, 28 U.S.C. § 1335.

Obtaining a default judgment is a two-step process: (1) the party seeking a default judgment first files a motion for entry of default by demonstrating that the opposing party has failed to answer or otherwise respond to the complaint, and (2) once the clerk has entered a default, the moving party may then seek entry of a default judgment against the defaulting party. *Keesh Construction, Inc. v. United States,* No. 1:02-CV-899, 2004 WL 2536840, *1 n. 1 (S.D.Ohio Sep.28, 2004) (citing Fed.R.Civ.P. 55). Under Fed.R.Civ.P. Rule 55(b)(1), the clerk may enter a judgment by default when the plaintiff's claim is for a sum certain or for a sum which can be computed with certainty and the defendant has been defaulted for failure to appear and is neither an infant nor incompetent. *Palladino v. General Crushed Stone Co.,* No. 96-CV-1355, 1997 WL 67792, *1 (N.D.N.Y. Feb. 13, 1997). In all other cases, the party seeking a judgment by default must apply to the court for entry of a default judgment under Fed.R.Civ.P. 55(b)(2). *Id.* In this instance, because there are competing claims to the money deposited into the registry of this Court and, therefore, the claims are not solely for a sum certain or for a sum which can be computed with certainty,

a judgment by default must be entered by the court under Fed.R.Civ.P. 55(b)(2).

Rule 55(b) (2) states, in pertinent part:

In all other cases the party entitled to a judgment by default shall apply to the court therefor; but no judgment by default shall be entered against an infant or incompetent person unless represented in the action by a general guardian, committee, conservator, or other such representative who has appeared therein. If the party against whom judgment by default is sought has appeared in the action, the party ... shall be served with written notice of the application for judgment at least 3 days prior to the hearing on such application. If, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter, the court may conduct such hearings or order such references as it deems necessary ....

Globe, as the party seeking a judgment by default, must establish the following:

**5** (1) when and against what party the default was entered; (2) identification of the pleading to which default was entered; (3) whether the defaulting party is an infant or incompetent person; (4) that the defendant is not in military services such that the Soldiers' and Sailors' Civil Relief Act of 1940 does not apply; and (5) that notice has been served on the defaulting party, if required by Fed.R.Civ.P. 55(b)(2).

*Disney Enterprises v. Farmer,* 427 F.Supp.2d 807, 815 (E.D.Tenn.2006) (citing *Elektra Entertainment Group,* 226 F.R.D. 388 (C.D.Cal.2005)). Globe has established the requisite factors for obtaining default judgment against Davis and Cross.

Globe has filed the affidavits of its counsel, Martin, in support of its motion for entry of a default judgment against Davis [Doc. 23-2] and Cross [Doc. 25-2]. With regard to Davis, Martin's affidavits dated January 21, 2008, state, in pertinent part, that the summons and complaint were served on Davis on October 24, 2007 and

Not Reported in F.Supp.2d, 2008 WL 586419 (E.D.Tenn.)

(Cite as: 2008 WL 586419 (E.D.Tenn.))

Davis has neither responded to the complaint nor requested additional time to respond [Doc. 23-2 at 1, ¶ 2], and the summons and complaint were served on Cross on November 14, 2007 and Cross has neither responded to the complaint nor requested additional time to respond [Doc. 23-5 at 1, ¶ 2]. Martin also filed supplemental affidavits dated February 7, 2008, concerning Globe's Rule 55(b) motions for entry of default judgment against Davis and Cross [Doc. 30 & 31]. Martin's affidavit states that Davis is "neither incompetent nor a member of the military" [Doc. 30 at 1, ¶ 3], and Cross is "neither incompetent nor a member of the military." [Doc. 31 at 1, ¶ 3].

I **CONCLUDE** Globe has satisfied the requirements for obtaining default judgements against Cross and Davis. Moreover, as Davis and Cross have never entered an appearance in this action, the notice requirement of Fed.R.Civ.P. 55(b)(2) does not apply.

In *Federal. Ins. Co. v. Adams,* No. 05-cv-00965-MSK-CBS, 2007 WL 1456103 (D.Colo. May 15, 2007), the court addressed the issue of forfeiting an interest in interpled funds by default, holding:

It has been held that the failure of a named interpleader defendant to answer the interpleader complaint and assert a claim to the res can be viewed as forfeiting any claim of entitlement that might have been asserted. A default judgment entered against an interpleader defendant thus terminates that party's interest in the fund at issue.

*Id.* at * 7 (internal citations and quotation marks omitted). *See also Conroy,* 431 F.Supp.2d at 226 ("A named interpleader defendant who fails to answer the interpleader complaint and assert a claim to the res forfeits any claim of entitlement that might have been asserted.").

Therefore, I **RECOMMEND** that: (1) Globe's motion for entry of a default judgment pursuant to Fed.R.Civ.P. 55(b) against Davis [Doc. 23], which terminates any interest or entitlement by Davis in the funds deposited by Globe into the registry of this Court, be **GRANTED;** and (2) Globe's motion for entry of a default judgment, pursuant to Fed.R.Civ.P. 55(b) against Cross [Doc. 25],

which terminates any interest or entitlement by Cross in the funds deposited by Globe into the registry of this Court, be **GRANTED.**

**IV. Conclusion**

**\*6** For the reasons set forth above, I **RECOMMEND**[FN3] that:

FN3. Any objections to this report and recommendation must be served and filed within ten (10) days after receipt of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the district court's order. *Thomas v. Arn,* 474 U.S. 140, 149 n. 7, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive and general. *Mira v. Marshall,* 806 F.2d 636, 637 (6th Cir.1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers,* 829 F.2d 1370, 1373 (6th Cir.1987).

(1) Globe's claims against Davis and Cross be **SEVERED** from its claims against the Lanning Defendants under Fed.R.Civ.P. 21;

(2) The order of reference as to Globe's claims against Davis and Cross [Doc. 27] be **WITHDRAWN;**

(3) Globe's motion for entry of a default judgment against Davis pursuant to Fed.R.Civ.P. 55(b) [Doc. 23] be **GRANTED** and any interest or entitlement by Davis to the funds deposited by Globe into the registry of this Court be **TERMINATED;** and,

(4) Globe's motion for entry of a default judgment against Cross, pursuant to Fed.R.Civ.P. 55(b) [Doc. 25] be **GRANTED** and any interest or entitlement by Cross to the funds deposited by Globe into the registry of this Court be **TERMINATED.**

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 586419 (E.D.Tenn.)

(Cite as: 2008 WL 586419 (E.D.Tenn.))

E.D.Tenn.,2008.

Globe American Cas. Co. v. Davis
Not Reported in F.Supp.2d, 2008 WL 586419 (E.D.Tenn.)
END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.